Stefan Szpajda (SBN 282322)
stefan@foliolaw.com
**FOLIO LAW GROUP PLLC**
1200 Westlake Ave. N. Ste. 809
Seattle, WA 98109
Tel: (206) 809-6809

David Stein (SBN 198256)
**OLSON STEIN LLP**
240 Nice Lane #301
Newport Beach, CA 92663
Tel: (949) 887-4600
dstein@olsonstein.com

*Attorneys for Plaintiff*
*Universal Electronics Inc.*
*Additional counsel on last page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNIVERSAL ELECTRONICS INC., a Delaware Company, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and AMAZON.COM SERVICES LLC, Delaware Corporations, <br><br> Defendant. | Case No. 8:26-cv-2117 <br><br> **COMPLAINT** |

1                                                      Case No. 8:26-cv-2117

Complaint

## COMPLAINT

Plaintiff Universal Electronics Inc. ("UEI") files this Complaint against Defendants Amazon.com, Inc. ("Amazon.com"), Amazon Web Services, Inc. ("AWS"), and Amazon.com Services LLC (formerly "Amazon.com Services Inc." and referred to herein as "Amazon Services") (collectively, "Defendant" or "Amazon").

## NATURE OF THE CASE

1. This is an action for the infringement of five United States Patents: U.S. Patent Nos. 9,706,252 ("the '252 patent"), 11,676,480 ("the '480 patent"), 11,102,538 ("the '538 patent"), 11,575,534 ("the '534 patent"), and 11,032,598 ("the '598 patent") (collectively, "the Asserted Patents").

2. Amazon has been making, using, selling, offering for sale, and/or importing certain products, including without limitations previously available, current, and soon to be available versions of the Echo, Echo Plus, Echo Dot, Echo Dot Max, Echo Hub, Echo Pop, Echo Spot, Echo Show, Echo Studio, Fire TV Stick, Fire TV Stick 4k, Fire TV Stick Lite, Fire TV Stick 4k Max, Fire TV Stick HD Alexa Voice Remote, Fire TV Alexa Voice Remote Pro, Fire TV Cube, Alexa App, Prime Video Mobile App, and related software (collectively, "the Accused Instrumentalities"), thereby infringing the Asserted Patents in violation of 35 U.S.C. § 271.

3. AWS and Amazon Services are wholly owned subsidiaries of Amazon.com. Amazon.com operates, manages, and relies on AWS's and Amazon Services' systems to make, use, sell, offer for sale, and import certain products and services in the United States. The acts of alleged infringement recited herein can be traced directly to Amazon.com through its assertion of management, control, and interference with AWS's and Amazon Services' operations in a manner that surpasses control incident to ownership alone. Amazon.com offers products and services that rely on, use, and interoperate with AWS and Amazon Services infrastructure, such as the Accused Instrumentalities. On information and belief, there exists and at all relevant times has existed a unity of interest, ownership, and control between Amazon.com on one hand and AWS and Amazon Services on the

other hand that would make recognition of their separate corporate forms a fraud, promote injustice, and result in an inequitable outcome.

4. UEI seeks appropriate damages, injunctive relief, and prejudgment and post-judgment interest for Defendant's infringement of the Asserted Patents.

## THE PARTIES

5. Plaintiff UEI is a 40-year-old public company based in Scottsdale, Arizona. It is the technology leader in home entertainment and home automation control, winning numerous awards related to universal entertainment control processes and technology. Throughout its 40-year history, UEI has consistently prioritized investments in research and development and technology acquisitions that have allowed it to pioneer, patent, and perfect key technologies in the area of entertainment interaction and control. As a result, UEI holds over 500 U.S. patents related to TV, home entertainment, and home control technologies and has many additional patent applications pending in the United States and jurisdictions throughout the world. Many of the world's leading consumer electronics OEM brands and subscription broadcasting operators purchase or license UEI's control technologies.

6. UEI is a Delaware corporation with its principal place of business located at 15147 N. Scottsdale Road, Suite H300 in Scottsdale, Arizona 85254. UEI maintains a research and development facility and other offices in this District located at 201 E. Sandpointe Ave. 7th Floor, in Santa Ana, California 92707. UEI owns the Asserted Patents.

7. On information and belief, Amazon.com is a corporation existing under the laws of Delaware with a principal address of 410 Terry Avenue North, in Seattle, Washington 98109, and has a regular and established place of business in this District located at 17300 Laguna Canyon Rd in Irvine, California 92618.

8. On information and belief, AWS is a Delaware corporation with a principal address of 410 Terry Avenue North, Seattle, Washington, 98109, and is a subsidiary of Amazon.com, Inc.

9. On information and belief, Amazon Services is a Delaware corporation with a principal address of 410 Terry Avenue North, Seattle, Washington, 98109, and is a subsidiary of Amazon.

10. On information and belief, Defendant sold and offered to sell infringing products and services throughout California, including in this judicial District, and introduced infringing products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in California and this judicial District.

## JURISDICTION AND VENUE

11. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

12. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

13. This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant has a continuous presence in, and systematic contact with, this District and has registered to conduct business in the state of California. In addition, Defendant, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout California by shipping, distributing, offering for sale, selling, and advertising (including through the provision of an interactive web page) its products and/or services in the State of California and the Central District of California. Defendant, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of the Accused Instrumentalities into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in the Central District of California. The Accused Instrumentalities have been and continue to be purchased and used by consumers in the Central District of California.

14. Defendant has committed and continues to commit acts of infringement of the Asserted Patents in violation of the United States Patent Laws, and has used the Accused

Instrumentalities within this District. Defendant's infringement has caused substantial injury to UEI, including within this District.

15.    Amazon resides in this District within the meaning of 28 U.S.C. § 1400(b). Amazon has committed acts of infringement within this District and has regular and established places of business here.

16.    Venue is proper in this District. There have been numerous cases against Amazon in this District involving some of the same Accused Instrumentalities as in this case where Amazon did not challenge venue at all. *See e.g. Longitude Licensing Limited v. Amazon.com, Inc.,* No. 8:23-cv-00039- JWH-DFM (C.D. Cal. Jan. 9, 2023); *NXP USA, Inc. v. MediaTek Inc. et al,* No. 8:21-cv-01810-JVS (ADSx) (C.D. Cal. Nov. 1, 2021); *SpeakWare, Inc. v. Amazon.com, Inc.,* No. 8:18-cv-01303-DOC (DFMx) (C.D. Cal. Jul. 26, 2018); *Broadcom Corporation et al v. Amazon.com, Inc. et al,* No. 8:16-cv-01774-JVS-JCGx (C.D. Cal. Sept. 23, 2016).

17.    In addition, Amazon's operations in the Central District of California are substantial and varied, and include employees and open positions that relate to the Accused Instrumentalities including Echo and Fire Stick products. For example, Amazon employees in Irvine list varied job titles on LinkedIn such as Sr. Software Engineer - Fire TV & Smart TV Platform,[1] Sr. Software QA Engineer – Amazon Lab126,[2] Software Development Engineer at Amazon Lab126,[3] Senior Product Manager,[4] Software Development Engineer

---

[1] *See* https://www.linkedin.com/in/ramamohan-bommireddy/ (last visited August 6, 2026) ("I build the software that powers Amazon Fire TV.").
[2] *See* https://www.linkedin.com/in/vicknesh-selvamani-8444378b/ (last visited August 6, 2026) ("I work on developing and testing innovative software solutions for smart devices, such as Fire TV, Echo, and Kindle.").
[3] *See* https://www.linkedin.com/in/pavanpattanada/ (last visited August 6, 2026) ("working as part of the Echo team.").
[4] *See* https://www.linkedin.com/in/pankajfadnavis/ (last visited August 6, 2026) ("I lead global subscription growth initiatives for Fire TV and Fire Tablet devices.").

at Amazon,[5] and Principal Product Manager - Tech, Device OS.[6] Additionally, Amazon advertises that it is currently hiring for 96 positions in Irvine,[7] including numerous positions related to its Devices divisions: Principal Product Manager - Technical, Alexa Connections,[8] Software Development Engineer - Real Time Visual Intelligence,[9] Software Dev Engineer,[10] and Sr. Software Development Engineer - FireTV.[11]

## **THE ASSERTED PATENTS**

18.    The '252 patent is titled "System and Method for User Monitoring and Intent Determination" and was issued by the United States Patent Office to inventors Arsham Hatambeiki and Paul Arling on July 11, 2017. The earliest application related to the '252 patent was filed on February 4, 2013. A true and correct copy of the '252 patent is attached as **Exhibit A**.

19.    UEI is the owner of all right, title, and interest in and to the '252 patent with the full and exclusive right to bring suit to enforce the '252 patent.

20.    The '252 patent is valid and enforceable under the United States Patent Laws.

21.    The '252 patent is generally directed to enhanced control of home entertainment systems using user-related inputs (e.g., image/audio sensing, presence/interaction detection) to automate system behavior and responsiveness. For

[5] See https://www.linkedin.com/in/oscar-lim-b2033233/ (last visited August 6, 2026) ("[I] develop software for Echo Family Devices, Alexa Gadgets, and Alexa Services integrating new technology initiatives into Alexa to bring new levels of user engagement to customers all around the world.").
[6] See https://www.linkedin.com/in/stefankyap/ (last visited August 6, 2026) ("responsible for operating system strategy and portfolio planning across Amazon Echo Devices.").
[7] See https://amazon.jobs/content/en/locations/united-states/california/irvine (last visited August 6, 2026).
[8] See https://amazon.jobs/en/jobs/10469631/principal-product-manager-technical-alexa-connections (last visited August 6, 2026).
[9] See https://amazon.jobs/en/jobs/10453287/software-development-engineer-real-time-visual-intelligence (last visited August 6, 2026).
[10] See https://amazon.jobs/en/jobs/10390344/software-dev-engineer (last visited August 6, 2026).
[11] See https://amazon.jobs/en/jobs/10483704/sr-software-development-engineer-firetv (last visited August 6, 2026).

example, claim 7 of the '252 patent is generally directed to a sensor-driven method for proactively readying and then restoring a home entertainment system's controlling device based on predicted user interaction. The problem addressed is that conventional systems lack mechanisms to use user presence or interaction cues to ready controls before the user acts and to revert when the anticipated action does not occur, leading to poorer user experience and unnecessary power or attention costs. Claim 7 solves this by: receiving event data via image and/or sound sensing interfaces; determining whether that data indicates a preparatory event; when it does, executing a first anticipatory action by the controlling device to transition it from a first state to a second, "readied" state for an anticipated user interaction with the controlling device (e.g., moving from quiescent to a more responsive state); and then determining whether the anticipated event occurs, and if it does not within a set time, executing a restorative action to transition the controlling device back to the first, not-readied state. These and other limitations remove the claims of the '252 patent from the realm of abstract ideas and render its claims patent eligible.

22.     The '480 patent is titled "System and Method for Simplified Setup of a Universal Remote Control" and was issued by the United States Patent Office to inventors Joseph Lee Haughawout and Patrick H. Hayes on June 13, 2023. The earliest application related to the '480 patent was filed on September 8, 2005. A true and correct copy of the '480 patent is attached as **Exhibit B**.

23.     UEI is the owner of all right, title, and interest in and to the '480 patent with the full and exclusive right to bring suit to enforce the '480 patent.

24.     The '480 patent is valid and enforceable under the United States Patent Laws.

25.     The '480 patent is directed to systems and software for simplifying the setup and provisioning of a controlling device (e.g., a universal remote) by using another host device (e.g., a set-top box/media access device) to drive an on-screen, interactive, code-selection workflow for the target appliance, such as a TV or other controllable device. The problem addressed is that traditional universal-remote setup is demanding and frustrating—users lose code tables, brand/model references change, and manual trial-and-

7        Case No. 8:26-cv-2117

Complaint

error is error-prone—so there is a need for a more user-friendly, guided setup process. Claim 1, for example, solves this by reciting a non-transitory computer-readable medium with instructions that cause a first device to display, on a third device's display, a series of interactive prompts, each tied to a specific command-code set for a previously identified brand/type of the third device (step (a)). The instructions further cause the first device to receive communications from a second device (the controlling device) in a format recognizable by the first device in response to each prompt (step (b)). The workflow automatically repeats the prompting/response cycle until the prompts are exhausted or a final response indicates that the command-code set associated with the last prompt should be provisioned to the second device for use in controlling the functional operations of the third device (step (c)). The specific limitations—on-screen interactive prompts mapped to discrete code sets for a prior-identified brand/type; receipt of second-device responses in a recognizable format; and automatic iteration culminating in provisioning—implement the claimed, guided setup that reduces user burden and error compared to manual code lookups. These and other limitations remove the claims of the '480 patent from the realm of abstract ideas and render its claims patent eligible.

26.    The '538 patent is titled "System and Method for Ubiquitous Appliance Control" and was issued by the United States Patent Office to inventors Jeremy Black and Patrick H. Hayes on August 24, 2021. The earliest application related to the '538 patent was filed on June 27, 2008. A true and correct copy of the '538 patent is attached as **Exhibit C.**

27.    UEI is the owner of all right, title, and interest in and to the '538 patent with the full and exclusive right to bring suit to enforce the '538 patent.

28.    The '538 patent is valid and enforceable under the United States Patent Laws.

29.    The '538 patent is generally directed to appliance control in which a network-capable relay/slave device serves simple GUI pages to a personal communication device and, in response to user interactions, issues appropriate command sequences to A/V equipment—e.g., a request like "switch_to_abc.irm" causes the relay to retrieve stored

Complaint

commands to tune a set-top box to ABC—so that content can be invoked by human-friendly identifiers rather than device-specific codes. The problem addressed is bridging the gap between a user selecting content "by name" (e.g., a network/broadcaster) and the heterogeneous, device-specific command sequences needed to actually tune equipment and present the corresponding media stream on a display, with the prior art not showing a single device that both uses the name data to locate the command sequence and then executes it to present the content. Claim 1, for example, solves this by reciting instructions on non-transitory media that cause a device to: (i) receive data identifying by name one of multiple media content sources; (ii) use that name-identifying data to locate a sequence of commands that will cause a display device to present the media stream from the named source; and (iii) execute the located sequence so the stream from the named source is actually presented on the display device. These and other limitations remove the claims of the '538 patent from the realm of abstract ideas and render its claims patent eligible.

30.     The '534 patent is titled "System and Method for Aggregating and Analyzing the Status of a System" and was issued by the United States Patent Office to inventors Arsham Hatambeiki and Paul D. Arling on February 7, 2023. The earliest application related to the '534 patent was filed on February 10, 2015. A true and correct copy of the '534 patent is attached as **Exhibit D**.

31.     UEI is the owner of all right, title, and interest in and to the '534 patent with the full and exclusive right to bring suit to enforce the '534 patent.

32.     The '534 patent is valid and enforceable under the United States Patent Laws.

33.     The '534 patent is generally directed to a centralized software agent that coordinates smart home appliances by discovering them, monitoring their states, and automatically issuing appropriate control commands to change device states when predefined conditions occur. The problem it addresses is that modern smart devices often cannot readily share information or cooperate across brands and protocols, making cross-device automation difficult for users and systems. To solve this, claim 1, for example, requires: performing device discovery to build a listing of all appliances in the system;

using that listing to identify corresponding command code sets (i.e., command collections, system data, and protocols) for each device so the agent can generate signals the specific devices will understand; associating, within the centralized software agent, particular "action-triggering" device states with actions to be taken; receiving device-state messages over an external wireless channel and determining when a current state matches a triggering state; and, upon a match, using the identified command code sets to generate and transmit operational commands over the wireless channel to target appliances to effect a change of state. These and other limitations remove the claims of the '534 patent from the realm of abstract ideas and render its claims patent eligible.

34.    The '598 patent is titled "System and Method for Retrieving Information While Commanding Operation of an Appliance" and was issued by the United States Patent Office to inventors Marcel Hilbrink, Patrick H. Hayes, and Jeremy K. Black on June 8, 2021. The earliest application related to the '598 patent was filed on July 16, 2004. A true and correct copy of the '598 patent is attached as **Exhibit E**.

35.    UEI is the owner of all right, title, and interest in and to the '598 patent with the full and exclusive right to bring suit to enforce the '598 patent.

36.    The '598 patent is valid and enforceable under the United States Patent Laws.

37.    The '598 patent is generally directed to enabling a portable electronic device (e.g., a remote/control device with media rendering) to hand off an in-progress media stream to an appliance via a wireless interface device so the appliance plays the stream instead of the portable device. The problem addressed is the lack of a seamless, user-minimal way to move media playback from a portable device to a home appliance (such as a TV or receiver) when a suitable wireless connection becomes available, avoiding manual steps to reconfigure outputs and restart playback on the appliance. For example, claim 1 solves this by: (i) having the portable device detect that it has been placed into wireless communication with a wireless interface device interfaced to the appliance, and (ii) in response to that detection, automatically rerouting the received media stream from local playback on the portable device to the wireless interface device for playback by the

Complaint

appliance, thereby shifting output without user intervention. These and other limitations remove the claims of the '598 patent from the realm of abstract ideas and render its claims patent eligible.

## THE ACCUSED INSTRUMENTALITIES

38. Examples of the Accused Instrumentalities include, without limitation, the following Amazon products and related software: Echo, Echo Plus, Echo Dot, Echo Dot Max, Echo Hub, Echo Pop, Echo Spot, Echo Show, Echo Studio, Fire TV Stick, Fire TV Stick 4k, Fire TV Stick Lite, Fire TV Stick 4k Max, Fire TV Stick HD Alexa Voice Remote, Fire TV Alexa Voice Remote Pro, Fire TV Cube, Alexa App, and Prime Video Mobile App. For example and without limitation, various models of the Accused Instrumentalities are discussed below.

39. Amazon Prime Video is a streaming video service by Amazon that allows users to "watch hundreds of TV shows and movies on [their] favorite devices."[12] Prime Video can be accessed through a web browser or through the Prime Video Mobile App, which is available for iOS and Android phone, tablet, or select Smart TVs.[13] The Amazon Prime Video Casting[14] Feature works by allowing Amazon Prime Video users to stream shows and movies from the Prime Video Mobile App to another screen, such as an Android TV, Fire TV, Echo Show 15, and other devices.[15]

40. In general, the Amazon Fire TV Stick is a device which lets users "[e]njoy streaming movies and shows from a variety of services" by simply plugging the product

---

[12] *See* https://www.amazon.com/gp/video/splash/getTheApp (last visited August 6, 2026).
[13] *Id.*
[14] "Video Casting" is the process of wirelessly transmitting or sending audio or video from one device to another. *See* https://www.bestbuy.com/discover-learn/the-difference-between-casting-and-mirroring/pcmcat1704902219059 (last visited August 6, 2026).
[15]*See* https://www.primevideo.com/help?nodeId=GDSGFYXXPCSAGVTH#:~:text=To%20cast%20to%20Chromecast%20/%20Android,your%20Echo%20Show%2015%20device (last visited August 6, 2026).

into the HDMI port on a user's TV.[16] Users plug the Fire TV Stick into their TV, connect it to WiFi, and are then able to access different kinds of streaming services.[17] To access these streaming services, users download free or paid apps from the Amazon Appstore, which requires users to be logged into their Amazon Account.[18] Users can then navigate their app interface by using a one of the Fire TV remotes (Amazon Fire TV Remote or Voice Remote), or with a game controller (either the Amazon Fire Game Controller, or other Bluetooth game controllers).[19] There are various exemplary models of Fire Sticks, including the Fire TV Stick 4K, Amazon Fire TV Stick, Fire TV Stick 4K Max, and Fire TV Stick Lite. These exemplary models are discussed in more detail below.

41.     Amazon has sold the Fire TV Stick 4K 1st Generation since 2018; it is a media streamer that can stream ultra-high definition, 4K media.[20] It features Alexa for voice control with support for a wide selection of smart home devices and it can access a massive selection of streaming media both from Amazon's own libraries and most major third parties.[21] The Alexa Voice Remote that accompanies this product can control Fire TV Stick 4K as well as power and volume on a wide range of compatible IR-enabled devices, including TVs, sound bars, and A/V receivers.[22] With this remote, users can also ask Alexa

---

[16] *See* https://www.aboutamazon.com/news/devices/amazon-fire-tv-stick (last visited August 6, 2026).
[17] *Id.*
[18] *See id.; see also* https://www.amazonforum.com/s/question/0D5Kf00003klUHeKAM/fire-tv-stick-install-without-amazon-account (last visited August 6, 2026) (an Amazon customer on an Amazon forum advising that "[a]ny Amazon device, from a stick, to a kindle, to a fire, to any Echo device requires an Amazon Account."); *see also* https://www.amazon.com/setting-up-fire-tv/b?ie=UTF8&node=23477579011 (last visited August 6, 2026).
[19] *See* https://developer.amazon.com/docs/fire-tv/design-and-user-experience-guidelines.html (last visited August 6, 2026).
[20] *See* https://www.pcmag.com/reviews/amazon-fire-tv-stick-4k (last visited August 6, 2026).
[21] *Id.*
[22] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvstick4k (August 6, 2026).

to switch TV inputs, change the channel on compatible cable/satellite set top boxes, view live camera feeds, or control lights, thermostats, and other compatible smart home devices.[23] Amazon released the Fire TV Stick 4K 2nd Generation in 2023, with many of the same core features as the 1st Generation product, including an Alexa remote that allows users to "quickly find, launch, and control content with [their] voice."[24] This version of the Alexa Voice Remote included dedicated power and volume buttons to control compatible TVs, soundbars, and receivers.[25]

42.    The Amazon Fire TV Stick 3rd Generation shares many characteristics with the other Fire TV Stick models. Amazon released the Amazon Fire TV Stick 3rd Generation in 2020, and it is advertised as being "50% more powerful than the previous generation for fast streaming in Full HD."[26] This product includes an Alexa Voice Remote that lets users search by voice to launch shows across apps.[27] This Alexa Voice Remote includes dedicated power, volume, and mute buttons to allow for easy control of TVs, soundbars, and A/V receivers with a single remote.[28]

---

[23] *Id.*

[24] *See* https://developer.amazon.com/docs/device-specs/device-specifications-comparison-table.html (with "Fire TV Stick 4K-1st Gen (2018)" and "Fire TV Stick 4K-2nd Gen (2023)-8 GB" selected) (last visited August 6, 2026); *see also* https://www.digitalreviews.net/reviews/audio/amazon-fire-tv-stick-4k-2nd-gen-an-incremental-update/ (last visited August 6, 2026); *see also* https://electronics.woot.com/offers/new-amazon-fire-tv-stick-4k-2nd-gen-1 (last visited August 6, 2026).

[25] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvstick4k_gen2_8 (last visited August 6, 2026).

[26] *See* https://help.screencloud.com/en/articles/10124990-how-to-tell-the-difference-between-the-amazon-fire-tv-stick-models-physically (last visited August 6, 2026); *see also* https://www.amazon.com/fire-tv-stick-with-3rd-gen-alexa-voice-remote/dp/B08C1W5N87 (last visited August 6, 2026).

[27] *See* https://www.amazon.com/fire-tv-stick-with-3rd-gen-alexa-voice-remote/dp/B08C1W5N87 (last visited August 6, 2026).

[28] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvstickgen3 (last visited August 6, 2026).

13                                    Case No. 8:26-cv-2117

Complaint

43.     Amazon released the Amazon Fire TV Stick 4K Max 1st Generation in 2021, and was considered a product upgrade to the Fire TV Stick 4K 1st Generation.[29] The Amazon Fire TV Stick 4K Max 1st Generation is described as being "loaded with apps and features," and as having an Alexa voice assistant that is built-in through the remote that can "provide information like weather reports and sports scores, search for content, and control compatible smart home devices."[30] The Alexa Voice Remote that comes with this product has dedicated power and volume buttons to control a wide range of compatible IR-enabled devices including TVs, sound bars, and A/V receivers, and has convenient preset app buttons.[31] Users can press and hold the voice button on the remote and ask Alexa to find, launch and control their content, or switch TV inputs, control lights, thermostats, and other compatible smart home devices.[32] The Amazon Fire TV Stick 4K Max 2nd Generation uses the same model of Alexa remote as the device's previous generation.[33] This remote has dedicated power, volume, and channel buttons to control compatible TVs, soundbars, and receivers.[34]

44.     The Amazon Fire TV Stick Lite launched in 2020, with Amazon describing it as an "even more affordable way to begin streaming in full HD" and reviewers calling it

---

[29] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvstick4kmax (last visited August 6, 2026); *see also* https://www.pcmag.com/reviews/amazon-fire-tv-stick-4k-max (last visited August 6, 2026).

[30] *See* https://www.pcmag.com/reviews/amazon-fire-tv-stick-4k-max (last visited August 6, 2026).

[31] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvstick4kmax (last visited August 6, 2206).

[32] *Id.*

[33] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvstick4kmax_gen2_16 (last visited August 6, 2026); *see also* https://dongknows.com/fire-tv-stick-4k-max-2nd-gen-2023-review/ (last visited August 6, 2026).

[34] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvstick4kmax_gen2_16 (last visited August 6, 2026).

an "ultra budget streamer with a voice remote."[35] The remote that accompanies the Fire Stick Lite is similar to the one that came with the first version of the Fire TV Stick, allowing for Alexa voice searches and having basic buttons for navigating menus and accessing streaming apps.[36] Amazon states that the Fire TV Stick Lite comes with "all the essentials you need to get set up and start watching" and refers to the accompanying Alexa Voice Remote Lite as "a new remote that allows you to use voice to find, launch, and control content."[37]

45.    The Amazon Fire TV Cube 3rd Generation is a media streaming product from 2022 with hands-free voice control.[38] "Most media hubs include some form of voice assistant or search, but the Fire TV Cube is the only one to let you use that assistant without requiring a remote."[39] The Fire TV Cube acts as an Alexa smart speaker, and can do so even when the TV is turned off.[40] Though the Fire TV Cube does not require a remote, it still comes with one that is "more complex" than the remotes that typically accompany the Fire TV Sticks, for example having a wider variety of buttons specific to certain streaming

---

[35] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvsticklite (last visited August 6, 2026); *see also* https://www.cnet.com/reviews/amazon-fire-tv-stick-lite-review/ (last visited August 6, 2026).

[36] *Id.*

[37] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-streaming-media-player.html?v=ftvsticklite (last visited August 6, 2026).

[38] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-cube.html?v=ftvcubegen3 (last visited August 6, 2026); *see also* https://www.pcmag.com/reviews/amazon-fire-tv-cube-2022 (last visited August 6, 2026).

[39] *See* https://www.pcmag.com/reviews/amazon-fire-tv-cube-2022 (last visited August 6, 2026).

[40] *See* https://www.whathifi.com/reviews/amazon-fire-tv-cube-3rd-generation (last visited August 6, 2026).

Complaint

platforms.[41] The Fire TV Cube can also access the Alexa Assistant through the remote, and can use Alexa to control a user's compatible TV, sound bar, and receivers through voice.[42]

46.    The various Amazon Fire TV products are sold with related Alexa Remote products such as the Fire TV Stick HD Alexa Voice Remote and Amazon Fire TV Alexa Voice Remote Pro.

47.    Amazon Echo is a product line "Designed for Alexa+" that consists of hands-free speaker and virtual assistant devices that interact with an end user via the Amazon Alexa cloud-based voice service.[43] Amazon describes Echo as being "the ultimate way to experience Alexa."[44] Amazon began selling the Amazon Echo 4th Generation smart speaker in 2020; it allows users to access the Alexa voice assistant.[45] Users are also able to use Echo through the Alexa App to control everything from volume, Bluetooth pairing, adding speakers, setting up multi-room groups, setting alarms, and more.[46] In fact, users have to use the Alexa App it for the initial setup process of their Echo device.[47]

---

[41] *See* https://www.pcmag.com/reviews/amazon-fire-tv-cube-2022 (last visited August 6, 2026).

[42] *See* https://developer.amazon.com/docs/device-specs/device-specifications-fire-tv-cube.html (last visited August 6, 2026); *see also* https://www.amazon.com/dp/B09BZZ3MM7?th=1 (last visited August 6, 2026); https://www.whathifi.com/reviews/amazon-fire-tv-cube-3rd-generation (last visited August 6, 2026).

[43] *See* https://www.amazon.com/b?ie=UTF8&node=210779651011 (last visited August 6, 2026); *see also* https://web.archive.org/web/20260305235125/https://www.techtarget.com/searchaws/definition/Amazon-Echo (last visited August 6, 2026).

[44] *See* https://www.amazon.com/gp/browse.html?node=9818047011 (last visited August 6, 2026).

[45] *See* https://www.nbcnews.com/select/shopping/new-amazon-echo-dot-ncna1241113 (last visited August 6, 2026); *see also* https://www.soundguys.com/amazon-echo-4th-gen-review-42618/ (last visited August 6, 2026).

[46] *See* https://www.soundguys.com/amazon-echo-4th-gen-review-42618/ (last visited August 6, 2026).

[47] *Id.*

48.     The Amazon Echo Show 5 3rd Generation is a smart speaker product released in 2023 that includes a touchscreen display.[48] The built-in display allows users to do things like see news and weather at a glance, view shows and song titles, browse photos, check camera feeds, make video calls, and stream apps like Amazon Music and Prime Video."[49] As with the Echo 4th Generation, the Echo Show 5 3rd Generation allows users to interact with the Alexa Assistant through voice and is accessible through the Alexa App.[50] The Amazon Echo Show 8 3rd Generation is another 2023 smart speaker product that includes a touchscreen display.[51] It also allows users to interact with the Alexa Assistant through voice to control both the device itself and other compatible smart home devices, and has features accessible through the Alexa App such as accessing a live feed from the device's camera.[52] The Amazon Echo Show 15 2nd Generation is a 2024 smart speaker with a touchscreen display.[53] This model has both Alexa support and a capable Fire TV interface, and also comes with the same remote that accompanies most of the Fire TV Stick products.[54] As with the other Echo Show products, the Amazon Echo Show 15 2nd Generation allows users to interact with the Alexa Assistant through voice to control both the device itself and other compatible smart home devices, and has features accessible through the Alexa App.[55] The Amazon Echo Show 21, another 2024 smart speaker with a

---

[48] *See* https://www.amazon.com/All-new-Echo-Show-5/dp/B09B2SBHQK?th=1 (last visited August 6, 2026); *see also* https://www.pcmag.com/reviews/amazon-echo-show-5-3rd-gen-2023-release (last visited August 6, 2026).
[49] *Id.*
[50] *Id.*
[51] *See* https://www.amazon.com/All-New-Echo-Show-8/dp/B0BLS3Y632?th=1 (last visited August 6, 2026); *see also* https://www.cnet.com/home/smart-home/amazon-echo-show-8-2023-review-great-screen-but-alexa-is-pushy/ (last visited August 6, 2026).
[52] *See id.; see* https://www.pcmag.com/reviews/amazon-echo-show-8-3rd-gen-2023 (last visited August 6, 2026).
[53] *See* https://www.amazon.com/Echo-Show-15-Smart-Display/dp/B0C5DPSW5Y?th=1 (last visited August 6, 2026); *see also* https://www.pcmag.com/reviews/amazon-echo-show-15-2024 (last visited August 6, 2026).
[54] *Id.*
[55] *Id.*

Complaint

touchscreen display, is "effectively identical" to the Amazon Echo Show 15 2nd Generation.[56] The products share a number of features, including Alexa support and a capable Fire TV interface.[57]

49.    The Amazon Echo Spot is a 2024 smart alarm clock that incorporates Alexa;[58] it has a screen that shows "smart display features with none of the clutter."[59] The device allows users to control Alexa-compatible smart home devices through the touchscreen, and allows users to log into the Alexa App for optimal use of the device.[60]

50.    The Amazon Echo Dot 5th Generation is a 2022 smart speaker with built-in Alexa capabilities that allow a user to "ask Alexa for weather updates and to set hands-free timers, get answers to your questions and even hear jokes."[61] The Echo Dot 5th Generation also allows users to "control compatible smart home devices with [their] voice" and to build "routines triggered by built-in motion or indoor temperature sensors."[62]

51.    The Amazon Echo Pop is a compact smart speaker with Alexa features that became available for sale in 2023.[63] The device allows users to "easily control compatible smart home devices like smart plugs or smart lights with [their] voice or the Alexa App."[64]

---

[56] *See* https://www.amazon.com/Echo-Show-21-Smart-Display/dp/B0CDWWS127?th=1 (last visited August 6, 2026); *see also* https://www.pcmag.com/reviews/amazon-echo-show-21 (last visited August 6, 2026).
[57] *See* https://www.pcmag.com/reviews/amazon-echo-show-21 (last visited August 6, 2026).
[58] *See* https://www.amazon.com/Amazon-Echo-Spot-2024-release-Smart-alarm-clock-with-vibrant-sound-Alexa-Black/dp/B0BFC7WQ6R?th=1 (last visited August 6, 2026).
[59] *See* https://www.wired.com/review/echo-spot/ (last visited August 6, 2026).
[60] *Id.*
[61] *See* https://www.amazon.com/b/?node=9818047011&ref_=mars_byline_aucc_branded (last visited August 6, 2026); *see also* https://www.amazon.com/dp/B09B8V1LZ3?ref=amzdv_ucc_dp_lod__B09B8V1LZ3&th=1 (last visited August 6, 2026).
[62] *See* https://www.amazon.com/dp/B09B8V1LZ3?ref=amzdv_ucc_dp_lod__B09B8V1LZ3&th=1 (last visited August 6, 2026).
[63] *See* https://www.amazon.com/Amazon-Echo-Alexa-fits-anywhere/dp/B09ZXJDSL5?th=1 (last visited August 6, 2026).
[64] *Id.*

It also allows users to interact with Alexa to "[h]ave Alexa set timers, check the weather, read the news, re-order paper towels, make calls, answer questions, and more."[65]

52.    The Amazon Echo Hub is an Alexa-enabled control panel for smart home devices that became available for purchase in 2024.[66] Amazon claims that the Echo Hub allows users to streamline their smart homes, for example because the device can "customize the controls and widgets[] displayed on [the] dashboard to quickly adjust devices, view cameras, start routines, and more."[67] The Echo Hub can also control select devices, such as lights, switches, and plugs, even if internet is down.[68] Overall, the Echo Hub was designed to make it easy to organize and control the smart home devices in a user's home.[69]

53.    The Amazon Alexa App is a mobile application that allows users to set up and manage Amazon Echo and other Alexa-enabled devices, control smart home devices, and use Alexa as a virtual assistant on their phone.[70] The Alexa App is a key feature of many of the Accused Instrumentalities covered above.

## AMAZON'S CONTROL OVER AND BENEFIT
## FROM THE ACCUSED INSTRUMENTALITIES

54.    Amazon exercises control over the Accused Instrumentalities in several ways, including without limitation by requiring users to sign into an Amazon account to access

---

[65] *Id.*

[66] *See* https://www.aboutamazon.com/news/devices/amazon-echo-hub-best-features (last visited August 6, 2026).

[67] *See* https://www.amazon.com/Echo-Hub/dp/B0BCR7M9KX?th=1 (last visited August 6, 2026).

[68] *See* https://www.aboutamazon.com/news/devices/amazon-echo-hub-best-features (last visited August 6, 2026).

[69] *Id.*

[70] *See* https://apps.apple.com/us/app/amazon-alexa/id944011620 (last visited August 6, 2026); *see also* https://www.amazon.com/gp/help/customer/display.html?nodeId=GGYT25QXMYBECH2E#:~:text=The%20Alexa%20app%20gives%20you,play%20games%20with%20Alexa%20Skills (last visited August 6, 2026).

the functionalities of various apps and products, and benefits from its ongoing control of the Accused Instrumentalities.

55.    Amazon Prime Video is offered by Amazon either as a standalone subscription or as a benefit of having an Amazon Prime membership.[71] Once a user has purchased a subscription to Prime Video by itself or signed up for an Amazon Prime membership, they need to log into or create an Amazon account in order to access Prime Video.[72] This can be done through a web browser, or through the Prime Video App on a compatible device (like a smart TV) or mobile phone.[73] Amazon Prime Video uses Amazon Web Service (AWS) Cloud and AWS Elemental Cloud as the underlying technologies for all its services, further showcasing Amazon's control of the product.[74] Additionally, Prime Video users must continuously apply app updates as they are released by Amazon or they will lose access to streaming capabilities.[75] The Prime Video Casting feature, which can be used while streaming shows and movies through Prime Video, by default also requires users to be logged into an Amazon account and is built upon Amazon technologies.

56.    Similarly, for the Alexa App, users must log into their Amazon account in order to access the app's functionalities.[76] These functionalities include using the Alexa in-app assistant, manage Alexa-enabled devices, and controlling smart home devices and

---

[71] *See* https://www.businessinsider.com/guides/streaming/what-is-prime-video (last visited August 6, 2026).

[72] *See* https://www.primevideo.com/help?nodeId=GQDJBTL3CFLLKPBV (last visited August 6, 2026).

[73] *Id.*

[74] *See* https://aws.amazon.com/solutions/case-studies/amazon-prime-video/ (last visited August 6, 2026).

[75] *See e.g.* https://www.amazonforum.com/s/question/0D5Kf00003Bw4tBKAR/need-to-update-prime-video-app (Amazon forum exchange lead by a customer who lost access to streaming because they were not able to update their Prime Video app) (last visited August 6, 2026).

[76] *See* https://www.amazon.in/gp/help/customer/display.html?ref_=hp_left_v4_sib&nodeId=GMR4JYXHYDSTNQRK (last visited August 6, 2026).

Complaint

music playback across Alexa devices.[77] The Alexa App interacts with Amazon's cloud to execute these functionalities; for example, when a user speaks to Alexa, a recording of what the user said to Alexa is sent to Amazon's cloud, where Amazon processes the user's request and other information before Alexa then responds.[78] Users were previously able to change Alexa settings so that recordings from interacting with Alexa were stored and processed locally, rather than being sent to Amazon servers, but that setting was removed in March 2025.[79] The Alexa App, much like Prime Video, is built on a foundation of other Amazon technologies, such as AWS DynamoDB storage service and AWS Private Certificate Authority (which to creates private certificates for each smart-home device to prove its identity and maintain secure connections).[80] Also similar to Prime Video, Alexa App users must continuously apply app updates as they are released by Amazon in order to continue successfully using the app.[81]

---

[77] *See* https://www.amazon.in/gp/help/customer/display.html?nodeId=GGYT25QXMYBECH2E (last visited August 6, 2026).

[78] *See* https://www.amazon.com/gp/help/customer/display.html?nodeId=GVP69FUJ48X9DK8V (last visited August 6, 2026).

[79] *See* https://www.pcmag.com/news/reminder-your-alexa-voice-recordings-will-soon-be-sent-to-amazon (last visited August 6, 2026).

[80] *See* https://www.amazon.science/latest-news/the-engineering-behind-alexas-contextual-speech-recognition (last visited August 6, 2026); *see also* https://aws.amazon.com/solutions/case-studies/amazon-alexa-case-study/ (last visited August 6, 2026).

[81] *See* https://www.amazon.com/gp/help/customer/display.html?nodeId=GMB5FVUB6REAVTXY (last visited August 6, 2026); *see also* https://www.asurion.com/connect/tech-tips/how-to-update-alexa-software/ (last visited August 6, 2026); *see also* https://www.amazon.com/gp/help/customer/display.html?nodeId=GMZQWNQRVENX4GTQ (last visited August 6, 2026).

Complaint

57.    Amazon states that a "basic requirement" for setting up its Fire TV Stick products is an Amazon account to use the product.[82] This is also true for the Fire TV Cube.[83] When a user logs into their Amazon account on a Fire TV Device, Amazon is able to automatically download and install updates onto the Fire TV products.[84] These updates are crucial for product performance, security, and keeping up to date with features and functionalities.[85] Many of the Amazon Fire TV products also come with an Alexa-enabled remote. As noted above, Alexa interacts with Amazon's cloud to respond to user requests. Therefore, Amazon still has control over Amazon Fire TV products, such as the Sticks and the Cube, beyond the point of sale because purchasers of the Amazon Fire TV products must have an Amazon account to (1) use the products and (2) keep the products' software up to date. Additionally, even after a consumer has purchased these products, Amazon maintains control by enmeshing the consumer further into the universe of AWS Cloud and other Amazon technologies.

58.    A core functionality of the various Amazon Echo products is built-in Alexa capabilities; as Amazon has stated, "Alexa and Echo work hand-in-hand" and "Alexa puts

---

[82] *See e.g.* https://www.amazon.com/gp/help/customer/display.html?nodeId=G32KYQ2NQA9YVGQW (last visited August 6, 2026); https://www.amazon.com/gp/help/customer/display.html?ref_=hp_left_v4_sib&nodeId=TymbaFq79bStv4Eiso (last visited August 6, 2026); https://www.amazon.com/gp/help/customer/display.html?ref_=hp_left_v4_sib&nodeId=T02r5ieBnpXt1giwZ3 (last visited August 6, 2026); *see also* https://www.amazonforum.com/s/question/0D54P00007rZ4pQSAS/do-i-need-to-have-an-amazon-account-to-work-my-fire-stick (interaction with Fire Stick user in Amazon forum from 2020 where Amazon employee confirms you need an Amazon account to use a Fire Stick) (last visited August 6, 2026).
[83] *See* https://www.amazon.com/gp/help/customer/display.html?ref_=hp_left_v4_sib&nodeId=GBYCE4N4B33YKG9L (last visited August 6, 2026).
[84] *See* https://www.airbeam.tv/knowledge-base/how-to-update-firestick/ (last visited August 6, 2026).
[85] *Id.*

the smart in Echo smart speakers, screens, and wearables."[86] In particular, it is the Alexa App which allows users to "set up and manage [their] Echo devices."[87] Amazon's control over the Alexa App is outlined above. Because consumers' use of the Echo line of devices is inextricable from Alexa and the Alexa App, Amazon's control extends over the Echo line of products even past the point of purchase.

## COUNT ONE

## INFRINGEMENT OF U.S. PATENT NO. 9,706,252

59. UEI re-alleges and incorporates by reference all of the foregoing paragraphs.

60. UEI is the owner of the '252 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

61. The specification of the '252 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

62. UEI has satisfied any requirements of 35 U.S.C. § 287(a) with respect to the '252 patent, and UEI is entitled to damages for Amazon's past infringement.

63. Amazon has directly infringed (literally and under the doctrine of equivalents) the '252 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '252 patent and by inducing others to infringe the claims of the '252 patent without a license or permission from UEI.

64. Amazon has infringed multiple claims of the '252 patent, including independent claim 7. By way of example only, the normal and customary use of Amazon's products made, used, sold, offered for sale and/or imported by Amazon infringes an

---

[86] *See* https://www.amazon.com/b?ie=UTF8&node=21576558011 (last visited August 6, 2026).
[87] *See* https://www.amazon.com/Alexa-App/b?ie=UTF8&node=18354642011 (last visited August 6, 2026).

exemplary claim of the '252 patent, as set forth in **Exhibit F**, which UEI provides without the benefit of information about the Accused Instrumentalities, which include the Amazon Echo, Echo Dot, Echo Pop, Echo Spot, and Echo Show.

65. Amazon also knowingly and intentionally induces and contributes to infringement of the '252 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Amazon has had knowledge of or was willfully blind to the '252 patent and the infringing nature of the Accused Instrumentalities at least as of the filing date of this lawsuit.

66. Despite its knowledge of the '252 patent, Amazon has induced, and continues to induce, infringement of the '252 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers; and providing the Accused Instrumentalities to customers. Amazon does so knowing and intending that its customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '252 patent, thereby specifically intending for and inducing its customers to infringe the '252 patent through its customers' normal and customary use of the Accused Instrumentalities. Accordingly, Amazon has been, and currently is, contributorily infringing the '252 patent in violation of 35 U.S.C. § 271(b).

67. Amazon has also infringed, and continues to infringe, the '252 patent because it has made, used, sold, offered for sale and/or imported the Accused Instrumentalities, which are used in the practicing the patent claims and constitute a material part of the invention. Amazon is aware that the components of the Accused Instrumentalities, and the Accused Instrumentalities themselves, are especially made or especially adapted for use in infringement of the patent, not a staple article or commodity of commerce suitable for substantial non-infringing use. Accordingly, Amazon has been, and currently is, contributorily infringing the '252 patent in violation of 35 U.S.C. § 271(c).

68.   UEI has been damages by Amazon's infringement of the '252 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT TWO

## INFRINGEMENT OF U.S. PATENT NO. 11,676,480

69.   UEI re-alleges and incorporates by reference all of the foregoing paragraphs.

70.   UEI is the owner of the '480 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

71.   The specification of the '480 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

72.   UEI has satisfied any requirements of 35 U.S.C. § 287(a) with respect to the '480 patent, and UEI is entitled to damages for Amazon's past infringement.

73.   Amazon has directly infringed (literally and under the doctrine of equivalents) the '480 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '480 patent and by inducing others to infringe the claims of the '480 patent without a license or permission from UEI.

74.   Amazon has infringed multiple claims of the '480 patent, including independent claim 1. By way of example only, the normal and customary use of Amazon's products made, used, sold, offered for sale and/or imported by Amazon infringes an exemplary claim of the '480 patent, as set forth in **Exhibit G**, which UEI provides without the benefit of information about the Accused Instrumentalities, which include the Fire TV Stick 4K, Fire TV Stick, Fire TV Stick Lite, Fire TV Stick 4K Max, Fire TV Cube, Fire TV Alexa Voice Remote Pro, and Fire TV Alexa Voice Remote.

75.    Amazon also knowingly and intentionally induces and contributes to infringement of the '480 patent in violation of 35 U.S.C. §§ 271(b), 271(c), and 271(f). For example, Amazon has had knowledge of or was willfully blind to the '480 patent and the infringing nature of the Accused Instrumentalities at least as of the filing date of this lawsuit.

76.    Despite its knowledge of the '480 patent, Amazon has induced, and continues to induce, infringement of the '480 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers; and providing the Accused Instrumentalities to customers. Amazon does so knowing and intending that its customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '480 patent, thereby specifically intending for and inducing its customers to infringe the '480 patent through its customers' normal and customary use of the Accused Instrumentalities. Accordingly, Amazon has been, and currently is, contributorily infringing the '480 patent in violation of 35 U.S.C. § 271(b).

77.    Amazon has also infringed, and continues to infringe, the '480 patent because it has made, used, sold, offered for sale and/or imported the Accused Instrumentalities, which are used in the practicing the patent claims and constitute a material part of the invention. Amazon is aware that the components of the Accused Instrumentalities, and the Accused Instrumentalities themselves, are especially made or especially adapted for use in infringement of the patent, not a staple article or commodity of commerce suitable for substantial non-infringing use. Accordingly, Amazon has been, and currently is, contributorily infringing the '480 patent in violation of 35 U.S.C. § 271(c).

78.    Amazon has further infringed, and continues to infringe, the '480 patent because, on information and belief, Amazon has, among other things, supplied or caused to be supplied in or from the United States, without license or authority, products or

Complaint

components of products that are combined and/or used outside the United States in a manner that falls within the scope of one or more claims of the '480 Patent including without limitation the Accused Instrumentalities falling within the scope of one or more claims of the '480 patent.

79. UEI has been damages by Amazon's infringement of the '480 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT THREE

### INFRINGEMENT OF U.S. PATENT NO. 11,102,538

80. UEI re-alleges and incorporates by reference all of the foregoing paragraphs.

81. UEI is the owner of the '538 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

82. The specification of the '538 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83. UEI has satisfied any requirements of 35 U.S.C. § 287(a) with respect to the '538 patent, and UEI is entitled to damages for Amazon's past infringement.

84. Amazon has directly infringed (literally and under the doctrine of equivalents) the '538 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '538 patent and by inducing others to infringe the claims of the '538 patent without a license or permission from UEI.

85. Amazon has infringed multiple claims of the '538 patent, including independent claim 1. By way of example only, the normal and customary use of Amazon's products made, used, sold, offered for sale and/or imported by Amazon infringes an exemplary claim of the '538 patent, as set forth in **Exhibit H**, which UEI provides without

the benefit of information about the Accused Instrumentalities, which include the Fire TV Stick, Fire TV Stick 4K, Fire TV Stick Lite, Fire TV Stick 4K Max, Fire TV Cube, and Fire TV Stick HD Alexa Voice Remote.

86.   Amazon also knowingly and intentionally induces and contributes to infringement of the '538 patent in violation of 35 U.S.C. §§ 271(b), 271(c), and 271(f). For example, Amazon has had knowledge of or was willfully blind to the '538 patent and the infringing nature of the Accused Instrumentalities at least as of the filing date of this lawsuit.

87.   Despite its knowledge of the '538 patent, Amazon has induced, and continues to induce, infringement of the '538 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers; and providing the Accused Instrumentalities to customers. Amazon does so knowing and intending that its customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '538 patent, thereby specifically intending for and inducing its customers to infringe the '538 patent through its customers' normal and customary use of the Accused Instrumentalities. Accordingly, Amazon has been, and currently is, contributorily infringing the '538 patent in violation of 35 U.S.C. § 271(b).

88.   Amazon has also infringed, and continues to infringe, the '538 patent because it has made, used, sold, offered for sale and/or imported the Accused Instrumentalities, which are used in the practicing the patent claims and constitute a material part of the invention. Amazon is aware that the components of the Accused Instrumentalities, and the Accused Instrumentalities themselves, are especially made or especially adapted for use in infringement of the patent, not a staple article or commodity of commerce suitable for substantial non-infringing use. Accordingly, Amazon has been, and currently is, contributorily infringing the '538 patent in violation of 35 U.S.C. § 271(c).

89.     Amazon has further infringed, and continues to infringe, the '538 patent because, on information and belief, Amazon has, among other things, supplied or caused to be supplied in or from the United States, without license or authority, products or components of products that are combined and/or used outside the United States in a manner that falls within the scope of one or more claims of the '538 Patent including without limitation the Accused Instrumentalities falling within the scope of one or more claims of the '538 patent.

90.     UEI has been damages by Amazon's infringement of the '538 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT FOUR

## INFRINGEMENT OF U.S. PATENT NO. 11,575,534

91.     UEI re-alleges and incorporates by reference all of the foregoing paragraphs.

92.     UEI is the owner of the '534 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

93.     The specification of the '534 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.     UEI has satisfied any requirements of 35 U.S.C. § 287(a) with respect to the '534 patent, and UEI is entitled to damages for Amazon's past infringement.

95.     Amazon has directly infringed (literally and under the doctrine of equivalents) the '534 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '534 patent and by inducing others to infringe the claims of the '534 patent without a license or permission from UEI.

Complaint

96. Amazon has infringed multiple claims of the '534 patent, including independent claim 1. By way of example only, the normal and customary use of Amazon's products made, used, sold, offered for sale and/or imported by Amazon infringes an exemplary claim of the '534 patent, as set forth in **Exhibit I,** which UEI provides without the benefit of information about the Accused Instrumentalities, which include the Alexa App and running on Echo products.

97. Amazon also knowingly and intentionally induces and contributes to infringement of the '534 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Amazon has had knowledge of or was willfully blind to the '534 patent and the infringing nature of the Accused Instrumentalities at least as of the filing date of this lawsuit.

98. Despite its knowledge of the '534 patent, Amazon has induced, and continues to induce, infringement of the '534 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers; and providing the Accused Instrumentalities to customers. Amazon does so knowing and intending that its customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '534 patent, thereby specifically intending for and inducing its customers to infringe the '534 patent through its customers' normal and customary use of the Accused Instrumentalities. Accordingly, Amazon has been, and currently is, contributorily infringing the '534 patent in violation of 35 U.S.C. § 271(b).

99. Amazon has also infringed, and continues to infringe, the '534 patent because it has made, used, sold, offered for sale and/or imported the Accused Instrumentalities, which are used in the practicing the patent claims and constitute a material part of the invention. Amazon is aware that the components of the Accused Instrumentalities, and the Accused Instrumentalities themselves, are especially made or especially adapted for use in

30                                    Case No. 8:26-cv-2117

Complaint

infringement of the patent, not a staple article or commodity of commerce suitable for substantial non-infringing use. Accordingly, Amazon has been, and currently is, contributorily infringing the '534 patent in violation of 35 U.S.C. § 271(c).

100. Amazon has further infringed, and continues to infringe, the '534 patent because, on information and belief, Amazon has, among other things, supplied or caused to be supplied in or from the United States, without license or authority, products or components of products that are combined and/or used outside the United States in a manner that falls within the scope of one or more claims of the '534 Patent including without limitation the Accused Instrumentalities falling within the scope of one or more claims of the '534 patent.

101. UEI has been damages by Amazon's infringement of the '534 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT FIVE

## INFRINGEMENT OF U.S. PATENT NO. 11,032,598

102. UEI re-alleges and incorporates by reference all of the foregoing paragraphs.

103. UEI is the owner of the '598 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

104. The specification of the '598 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

105. UEI has satisfied any requirements of 35 U.S.C. § 287(a) with respect to the '598 patent, and UEI is entitled to damages for Amazon's past infringement.

106. Amazon has directly infringed (literally and under the doctrine of equivalents) the '598 patent by making, using, selling, offering for sale, or importing products that

infringe the claims of the '598 patent and by inducing others to infringe the claims of the '598 patent without a license or permission from UEI.

107. Amazon has infringed multiple claims of the '598 patent, including independent claim 1. By way of example only, the normal and customary use of Amazon's products made, used, sold, offered for sale and/or imported by Amazon infringes an exemplary claim of the '598 patent, as set forth in **Exhibit J**, which UEI provides without the benefit of information about the Accused Instrumentalities, which include the Prime Video Mobile App.

108. Amazon also knowingly and intentionally induces and contributes to infringement of the '598 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Amazon has had knowledge of or was willfully blind to the '598 patent and the infringing nature of the Accused Instrumentalities at least as of the filing date of this lawsuit.

109. Despite its knowledge of the '598 patent, Amazon has induced, and continues to induce, infringement of the '598 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to its customers; and providing the Accused Instrumentalities to customers. Amazon does so knowing and intending that its customers will commit these infringing acts. Amazon also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '598 patent, thereby specifically intending for and inducing its customers to infringe the '598 patent through its customers' normal and customary use of the Accused Instrumentalities. Accordingly, Amazon has been, and currently is, contributorily infringing the '598 patent in violation of 35 U.S.C. § 271(b).

110. Amazon has also infringed, and continues to infringe, the '598 patent because it has made, used, sold, offered for sale and/or imported the Accused Instrumentalities, which are used in the practicing the patent claims and constitute a material part of the

invention. Amazon is aware that the components of the Accused Instrumentalities, and the Accused Instrumentalities themselves, are especially made or especially adapted for use in infringement of the patent, not a staple article or commodity of commerce suitable for substantial non-infringing use. Accordingly, Amazon has been, and currently is, contributorily infringing the '598 patent in violation of 35 U.S.C. § 271(c).

111.   UEI has been damages by Amazon's infringement of the '598 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## PRAYER FOR RELIEF

WHEREFORE, UEI respectfully requests judgment against Amazon as follows:

A.     That this Court determine that Amazon, to the extent not enjoined, has infringed and continues to infringe the Asserted Patents and that the Asserted Patents are valid and enforceable;

B.     that this Court enter an injunction prohibiting Amazon and its agents, officers, servants, employees, and all persons in active concert or participation with Amazon from deploying, operating, maintaining, testing, and using the Accused Instrumentalities, and from otherwise infringing any of the Asserted Patents;

C.     that this Court ascertain and award UEI damages under 35 U.S.C. § 284 sufficient to compensate for Amazon's infringement, including but not limited to infringement occurring before the filing of this lawsuit;

D.     that this Court ascertain and award UEI any post-judgment ongoing royalties under 35 U.S.C. § 284 as may be appropriate;

E.     that this Court award UEI any applicable prejudgment and post-judgment interest;

F.     that this Court enter a finding that this case is exceptional under 35 U.S.C. § 285, and an award of UEI's reasonable attorney's fees and costs; and

G.     that this Court award UEI such other relief at law or in equity as the Court deems just and proper.

## JURY DEMAND

UEI requests that all claims and causes of action raised in this Complaint against Amazon be tried to a jury to the fullest extent possible.

Dated: August 6, 2026                    Respectfully Submitted,


                                         */s/Stefan Szpajda*
                                         Stefan Szpajda (SBN 282322)
                                         C. Maclain Wells (SBN 221609)
                                         Sam Kim (SBN 282582)
                                         Cliff Win, Jr. (SBN 270517)
                                         **FOLIO LAW GROUP PLLC**
                                         1200 Westlake Ave. N. Ste. 809
                                         Seattle, WA 98109
                                         Tel: (206) 809-6809
                                         stefan@foliolaw.com
                                         maclain@foliolaw.com
                                         sam.kim@foliolaw.com
                                         cliff.win@foliolaw.com

                                         David Stein (SBN 198256)
                                         **OLSON STEIN LLP**
                                         240 Nice Lane #301
                                         Newport Beach, CA 92663
                                         Tel: (949) 887-4600
                                         dstein@olsonstein.com

                                         *Attorneys for Plaintiff*
                                         *Universal Electronics Inc.*

34                                       Case No. 8:26-cv-2117

Complaint